IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CE PROVIDERS,<br><br>               Plaintiff,<br><br>v.<br><br>STEARNS BANK<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART DEFENDANT'S MOTION FOR SURREPLY<br><br>Case No. 2:18-CV-100 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim and Plaintiff's Motion for Surreply. For the reasons set forth below, the Court will grant Defendant's Motion and grant Plaintiff's Motion in part.

I. BACKGROUND

In 2016, Plaintiff CE Providers, LLC ("Plaintiff" or "CEPS") sold a business to Joppa Capital Ventures, Inc. ("Joppa")—a non-party to this action. Plaintiff seller-financed a portion of the purchase and Defendant Stearns Bank National Association ("Defendant" or "Stearns") provided the remaining funding.

As a prerequisite to issuing the funds, Defendant required that Plaintiff and Joppa enter into several agreements, including an intercreditor agreement (the "Agreement"), wherein the parties agreed that the loan issued to Joppa by Plaintiff would be entirely subordinated to the loan issued by Defendant. Also included in the Agreement is a holdback provision wherein the parties agree that Defendant would hold $500,000 of the purchase price as additional security. Under the terms of the Agreement, Defendant is to release the holdback funds to Plaintiff in

1

three instalments to be paid on the anniversary of the Agreement for three years. The first instalment in the amount of $166,667.00 was due December 8, 2017. The Agreement provides Defendant with the right to retain the holdback funds as security if Joppa is in default to Defendant or in Defendant's discretion "pursuant to [the] Agreement."[1]

On November 10, 2017, following an unrelated dispute between Plaintiff and Joppa regarding Joppa's refusal to share certain information, Plaintiff sent a letter to Joppa notifying it that Joppa was in default to Plaintiff. Having learned that Plaintiff considered Joppa in default of Plaintiff's loan, Defendant chose to retain the first holdback payment until Joppa and Plaintiff reached a resolution. A dispute arose between Plaintiff and Defendant regarding Defendant's rights under the Agreement. On January 25, 2018, Plaintiff filed this suit in the Third District Court of Utah in response to Defendant's continued refusal to disperse the holdback funds. Defendant removed the matter to this Court on January 30, 2018, on the basis of diversity jurisdiction.

Plaintiff's Complaint alleges (1) breach of fiduciary duty and (2) unjust enrichment; and seeks declaratory relief that (3) Defendant was obligated to disperse the funds as stated in the Agreement, its failure to do so amounts to a material breach of the Agreement, and, therefore, the Agreement is void and without legal effect such that Plaintiff's loan is no longer subordinated to Defendant's loan; and (4) that Defendant's failure to declare Joppa in default and failure to make the first holdback payment to Plaintiff amounts to a waiver of right to declare Joppa in default.

In response, Defendant filed the Motion to Dismiss now before the Court. Defendant argues that each of Plaintiff's claims should be dismissed under Rule 12(b)(6) of the Federal

---

[1] Docket No. 6-1, at 2, 3.

Rules of Civil Procedure because they fail to state a claim upon which relief can be granted. Specifically, Defendant argues that Plaintiff's breach of fiduciary duty and unjust enrichment claims are barred by the economic loss rule, and that Plaintiff's declaratory judgment claims are directly contrary to the language of the Agreement.

Following Plaintiff's Response and Defendant's Reply, Plaintiff filed a Motion for Leave to File a Surreply, arguing that Defendant raised arguments and facts for the first time in its Reply and, thus, Plaintiff should be allowed to address them. Plaintiff attached its proposed surreply to its Motion.

## II. DISCUSSION

### A. MOTION FOR SURREPLY

"The court may permit the filing of a surreply at its discretion."[2] "In general, a court will grant the nonmoving party an opportunity to file a surreply brief if it has not had the opportunity to respond to new evidence or new legal arguments presented by the moving party in a reply memorandum."[3]

Plaintiff argues that Defendant presented two new arguments in its Reply Memorandum: (1) that the alleged breach of contract committed by Stearns was immaterial; and (2) that the alleged breach of contract by CEPS was material. Defendant contends that those issues were presented on page 4 of the Motion to Dismiss and argued by both parties in the subsequent briefing.

---

[2] *Tucker v. United States*, No. 2:12-CV-409 DAK, 2013 WL 3776272, at *2 (D. Utah July 17, 2013) (citing *Baptist Mem'l Hosp. v. Sebelius*, 765 F. Supp. 2d 20, 31 (D. D.C. 2011)).

[3] *Id.* (citing *Green v. N.M.*, 420 F.3d 1189, 1196 (10th Cir. 2005)).

First, Defendant's Motion to Dismiss does allege that CEPS breached the contract, but does not allege whether that breach was material or immaterial. Defendant alleges that Plaintiff materially breached the contract for the first time in its Reply.[4] Therefore, the Court finds that Plaintiff did not have an opportunity to respond to that specific allegation and has considered the arguments in the Surreply on that issue. However, these arguments in Plaintiff's Surreply were not relevant in the following analysis of Defendant's Motion to Dismiss.

Second, as alleged by Plaintiff, Defendant argues that its alleged breach would not amount to a material breach for the first time in its Reply. However, Defendant makes this argument in response to Plaintiff's Response Memorandum, which argues that Defendant breached the contract and that breach was material. Plaintiff, therefore, has already presented arguments regarding this issue and the Court has not considered further arguments related to the materiality of Defendant's alleged breach in Plaintiff's Surreply. Again, regardless, these arguments were not relevant to the analysis below.

B. MOTION TO DISMISS

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[5] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[6] which requires "more than an unadorned, the-defendant-unlawfully

---

[4] Docket No. 16, at 3.

[5] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

harmed-me accusation."[7]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[8]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[9]  As the United States Supreme Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[10]

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[11] and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[12]  The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[13]

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[9] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[10] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

[11] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[12] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[13] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Plaintiff brings four causes of action in its Complaint: unjust enrichment, breach of fiduciary duty, declaratory judgment that Defendant breached the contract, among other things, and declaratory judgment that Defendant has waived its right to declare Joppa in default. Defendant argues each of these claims should be dismissed.

*i. Unjust enrichment*

"The doctrine [of unjust enrichment] is designed to provide an equitable remedy where one does not exist at law. In other words, if a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment."[14]

Plaintiff argues its unjust enrichment claim is appropriately before this Court because there is not a valid contract governing the dispute. Plaintiff explains that there is not a valid contract because Defendant materially breached the contract and, therefore, the Agreement is invalid.[15] This argument finds no support in the law. While a material breach of contract will excuse the non-breaching party from further performance on the contract,[16] a material breach does not automatically result in a full eradication of the contract as if it never existed. If this were the case, a material breach would have the backwards effect of relieving all parties of their obligations under the contract, potentially rewarding the breaching party. Notably, Plaintiff's Complaint includes causes of action relying on the existence of the Agreement. Plaintiff cannot

---

[14] *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996), *rev'd on other grounds, Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234.

[15] Docket No. 15, at 12 ("As set forth above, due to its defaults, Stearns is no longer in possession of the Subordinated Holdback under a valid, enforceable agreement.").

[16] *Cross v. Olsen,* 2013 UT App 135, ¶ 26, 303 P.3d 1030 ("Only a material breach will excuse further performance by the non-breaching party.").

simultaneously argue the Agreement is wholly invalid while seeking a declaration of rights under the provisions of the same agreement.

A material breach generally will give the non-breaching party "the right of rescission and an action for restitution as an alternative to an action for damages."[17] However, "[t]o rescind a partially executed contract, the party seeking rescission usually must be able to place the other party in the same position that existed before the execution of the contract."[18] Plaintiff has not requested rescission or alleged that it has the ability to place Defendant in the same position it was prior to the Agreement. Moreover, as will be discussed, Defendant's retention of the holdback funds is permitted under the Agreement. Therefore, there was no breach, material or otherwise.

Because there is an enforceable contract between the parties, Plaintiff's unjust enrichment claim is invalid and the Court will dismiss it as such.

*ii. Breach of Fiduciary Duty*

Defendant argues that Plaintiff's claim for breach of fiduciary duty is barred by Utah's economic loss rule. "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[19] "The economic loss rule requires that a

---

[17] *Polyglycoat Corp. v. Holcomb*, 591 P.2d 449, 451 (Utah 1979).

[18] *50 W. Broadway Assocs. v. Redevelopment Agency of Salt Lake City*, 784 P.2d 1162, 1170 (Utah 1989).

[19] *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.,* 2001 UT 54, ¶ 32, 28 P.3d 669.

7

contract claim provide the remedy for an 'economic loss.'"[20] "[E]conomic losses are those that arise from breach of contract."[21]

The Utah Supreme Court expressly adopted the following interpretation of the economic loss rule in *Hermansen v. Tasulis*:[22]

> The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached. Thus, our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care* under tort law.[23]

Plaintiff has not alleged a breach of duty separate from its contract-related claims. Defendant took possession of the holdback funds in accordance with the Agreement. Now, the dispute between Plaintiff and Defendant arises under their differing interpretations of Defendant's rights to the holdback funds under the language of the Agreement. Notably, Plaintiff's Complaint references the Agreement in outlining its breach of fiduciary duty claim, stating "[u]nder the terms of the Intercreditor Agreement, Stearns took upon itself the obligation to hold and guard CEP's funds."[24] The alleged breach of fiduciary duty is, therefore, wholly related to the Agreement between the two parties. Plaintiff has not alleged a breach of any duty that does not directly relate to the duties imposed on the parties by the Agreement. As Defendant argues, quoting this Court, "[i]t is clear that the duties alleged by the plaintiff in its tort claims are not independent of the parties' contract but are part and parcel of the defined rights,

---

[20] *Simantob v. Mullican Flooring, L.P.*, 527 F. App'x 799, 803 (10th Cir. 2013).

[21] *Id.*

[22] 2002 UT 52, 48 P.3d 235.

[23] *Id.* ¶ 16 (quoting *Grynberg v. Agric. Tech., Inc.*, 10 P.3d 1267, 1269 (Colo. 2000)).

[24] Docket No. 2-2 ¶ 127.

obligations and potential liabilities mutually agreed to by the parties."[25] Plaintiff's claim for breach of fiduciary duty is, therefore, barred by the economic loss rule.

Even if Plaintiff alleged an independent breach, Defendant does not hold a fiduciary relationship with Plaintiff. "A fiduciary is a person with a duty to act primarily for the benefit of another" and one who "is in a position to have and exercise and does have and exercise influence over another."[26]

> There is no invariable rule which determines the existence of a fiduciary relationship, but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other.[27]

Plaintiff has not alleged any facts supporting that Defendant held the advantage in their business dealings or that Defendant had some superior business knowledge it used to take advantage of Plaintiff. Plaintiff and Defendant both acted as a lender to Joppa. Plaintiff and Defendant entered into an agreement in which they agreed Plaintiff's loan would be wholly subservient to Defendant's loan in exchange for Defendant's agreement to issue a loan to Joppa and complete the desired sale. Plaintiff has not supplied support for the proposition that a fiduciary relationship exists between two lenders or between a party holding funds as collateral and the party supplying the collateral.

---

[25] Docket No. 6, at 7 (quoting *Anapoell v. Am. Express Bus. Fin. Corp.*, No. 2:07-CV-198 TC, 2007 WL 4270548, at *6 (D. Utah Nov. 30, 2007)).

[26] *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990) (quoting *Dennison State Bank v. Madeira,* 640 P.2d 1235, 1241 (Kan. 1982)).

[27] *Id.* at 1333 (quoting *Yuster v. Keefe*, 90 N.E. 920, 922 (Ind. Ct. App. 1910)).

Plaintiff argues that the holdback funds are analogous to a trust, and, therefore, Defendant owes Plaintiff a duty as either a trustee or an escrow agent. The facts alleged do not support either of these arguments.

First, Defendant is not a trustee and the holdback funds are not a trust. Under Utah law "[a] trust is created only if [, among other things,] . . . the settlor indicates an intention to create a trust or a statute, judgment, or decree authorizes the creation of a trust."[28] Nothing stated in the Complaint or the Agreement suggests the holdback funds are intended as a trust. Significantly, the word "trust" or "trustee" is nowhere in either document. Because the holdback funds are not a trust, Defendant is not a trustee owing a fiduciary duty to Plaintiff as beneficiary.

Second, Defendant is not an escrow agent. Utah Code Annotated states that, "'Escrow agent' means a person that provides or offers to provide escrow services to the public."[29] Escrow agents are required to register with the state on a yearly basis.[30] In order to register, the escrow agent must meet various qualifications and pay a $100 fee.[31] Nothing in either the Complaint or the Agreement suggests that Defendant is a registered escrow agent holding itself out as performing escrow services. Because Defendant is not an escrow agent, it does not owe a fiduciary duty as such, and Plaintiff's second theory also fails.

*iii. Declaratory Judgment Claims*

Plaintiff seeks declaratory judgment that Defendant is obligated under the Agreement to release the first installment of the holdback funds, and that their failure to do so materially

---

[28] Utah Code Ann. § 75-7-402(1)(b).

[29] *Id.* § 7-22-101(1)(b).

[30] *Id.* § 7-22-103(1)(a).

[31] *Id.*

breached the contract. Plaintiff also seeks declaratory judgment that Defendant waived its right to declare Joppa in default.

   a. *Defendant's right to withhold the funds*

The parties dispute the proper interpretation of various provisions in the Agreement. The Court must, therefore, first interpret the language of the Agreement to determine whether Plaintiff has stated a valid cause of action.

Under Utah law, "[t]he underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract."[32] "In interpreting a contract, 'we look to the writing itself to ascertain the parties' intentions, and we consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none.'"[33] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[34] "However, if the language of the contract is ambiguous such that the intentions of the parties cannot be determined by the plain language of the agreement, 'extrinsic evidence must be looked to in order to determine the intentions of the parties.'"[35] "An ambiguity exists in a contract term or provision 'if it is capable of more than one reasonable

---

[32] *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139.

[33] *Id.* ¶ 18 (quoting *Jones v. ERA Brokers Consol.,* 2000 UT 61, ¶ 12, 6 P.3d 1129).

[34] *Id.* ¶ 19 (quoting *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599).

[35] *Id.* (quoting *Cent. Fla. Invs.,* 2002 UT 3, ¶ 12).

interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.'"[36] "Whether an ambiguity exists in a contract is a question of law."[37]

The Agreement makes multiple references to the circumstances giving Defendant the contractual right to deny release of the holdback funds. Generally, the disputed portions of the Agreement provide that "Lender [Defendant] may . . . setoff, or refrain from releasing to Creditor [Plaintiff] (or to Borrower [Joppa]), the Subordinated Holdback or any funds in the Holdback Account in Lender's sole discretion pursuant to this Agreement or if Borrower is in default to Lender."[38]

The parties do not dispute that Defendant is within its contractual rights to withhold the funds if Joppa is in default to Defendant. The parties do, however, dispute what constitutes a default under the Agreement. Plaintiff argues that Defendant has not made a declaration of default and therefore cannot withhold the holdback funds. Defendant does not dispute that it has not made a declaration of default, but argues that the Agreement does not require any such declaration and further, that Plaintiff's declaration of Joppa's default is sufficient to allow Defendant to deny release of the holdback funds under the Agreement. The Court agrees with Defendant.

Under a provision entitled "Default by Borrower," the Agreement states, "[i]f Borrower becomes insolvent or bankrupt, this Agreement shall remain in full force and effect. Any default by Borrower under the terms of the Subordinated Indebtedness also shall constitute an event of

---

[36] *Id.* ¶ 20 (quoting *SME Indus.*, 2001 UT 54 at ¶ 14).

[37] *Id.* ¶ 22 (internal quotation marks and citations omitted).

[38] Docket No. 6-1, at 2–3. The same or substantively similar language is found throughout the Agreement.

default under the terms of the Superior Indebtedness in favor of Lender."[39] Defendant argues this provision provides that a default to Plaintiff amounts to an automatic default to Defendant and, therefore, allows Defendant to maintain control of the holdback funds if Plaintiff has declared Joppa to be in default only to Plaintiff.

Plaintiff disagrees, arguing that the provision provides only that Defendant *could* declare Joppa to be in default if Joppa is in default of the subordinated loan. Plaintiff argues that Defendant has not made such a declaration and, therefore, cannot withhold the funds. Plaintiff further argues that, because all other references to Defendant's ability to withhold the holdback funds contained in the Agreement make reference only to a default to the lender, Joppa must be in default to Defendant in order for Defendant to maintain control of the holdback funds.

The plain text of the Agreement does not support Plaintiff's interpretation. The Agreement states that Joppa's default under the terms of its agreement with Plaintiff "*shall* constitute an event of default . . . in favor of [Defendant]." The term "shall" denotes a mandatory action.[40] Therefore, regardless of Defendant's willingness or refusal to make a formal declaration of default regarding Joppa's loan to either Plaintiff or Defendant, the language of the Agreement unambiguously states that Joppa is mandatorily in default of its obligations to Defendant if Joppa is in default of its obligations to Plaintiff.

---

[39] Docket No. 6-1, at 3.

[40] *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 27, 367 P.3d 994 ("Black's Law Dictionary defines 'shall' as 'a duty to,' 'is required to,' or 'mandatory.' We have also held that the legislature's use of the word 'shall' in statutes creates mandatory obligations. And while it is true . . . that "shall" can be directory or express a future expectation, it is 'the mandatory sense that drafters typically intend and that courts typically uphold.'") (citations omitted).

Further, the Agreement does not contain any language requiring Defendant to make a formal declaration of default in order to withhold the funds. In fact, the Agreement directly contradicts Plaintiff's argument, stating "Creditor [Plaintiff] waives any right to require Lender [Defendant] . . . to make any . . . notice of any kind . . . or notice of any action or nonaction on the part of Borrower [Joppa]. . . ."[41]

The overall purpose of the Agreement offers additional support for Defendant's interpretation. The purpose of the Agreement is to minimize risk to Defendant and ensure that Plaintiff's loan is wholly subordinated to Defendant's loan. That Defendant would require any default to amount to a default in its favor is logically in line with this purpose.

Plaintiff argues the Agreement should not be enforced because the Agreement is "confused, confusing, and ambiguous." As discussed, the plain language of the portions of the Agreement relevant to this dispute are not ambiguous. The unambiguous terms may be unfairly favorable to Defendant, as argued by Plaintiff, however, that a contract does not confer equal benefit on both parties does not provide the Court with authority to rewrite the contract.[42] The Court will, therefore, enforce the unambiguous terms of the Agreement as written and agreed to by both parties.

Having interpreted the Contract, the Court must determine if Joppa is in default to Plaintiff, triggering the "Default by Borrower" clause and allowing Defendant to maintain possession of the holdback funds. Defendant relies on Plaintiff's Complaint to support that Joppa

---

[41] Docket No. 6-1, at 2.

[42] *See Cent. Fla. Invs., Inc.*, 2002 UT 3 at ¶ 18 n.4 ("While CFI now argues, in effect, that such a narrow choice of remedies is so foolish as to be no remedy at all, it is the bargain they struck with PWA, and it is not for the courts to save them from it.").

14

is in default to Plaintiff. Plaintiff's Complaint provides that "[o]n or about November 10th . . . CEPS had a letter served upon Joppa that outlined its breach of the Security Agreement."[43] The Complaint later refers to that letter as a "notice of default."[44] Plaintiff's only response is a parenthetical contained in its Response, which states that CEPS has "disavowed" its declaration of default.[45] Plaintiff cites Paragraph 90 of its Complaint in support of this factual allegation. Paragraph 90 states only that CEPS "had not taken any action on Joppa's default and would seek written permission prior to filing a lawsuit or taking any additional steps."[46] This paragraph, taken as true, does not support that CEPS has disavowed its declaration of default, only that it has not yet taken action to collect on the default. Therefore, even taking all the facts alleged in the Complaint as true, it seems that Plaintiff considers Joppa in default.

The Agreement unambiguously states that a default as to Plaintiff's loan "shall" amount to a default as to Defendant's loan. The Agreement also unambiguously states that Defendant may withhold the holdback funds in the event of Joppa's default to Defendant. The facts alleged in the Complaint support that Plaintiff has declared Joppa to be in default, mandatorily creating a default to Defendant. Plaintiff has not alleged that Joppa has since remedied the default or that it no longer considers Joppa in default. Thus, Defendant is within its contracted rights to maintain control over the holdback funds. The Court, therefore, finds that Defendant has not violated the Agreement by failing to release the holdback funds on the date set in the Agreement, and will

---

[43] Docket No. 2-2 ¶ 75.

[44] *Id.* ¶ 77.

[45] Docket No. 15, at 7.

[46] Docket No. 2-2 ¶ 90.

dismiss Plaintiff's third cause of action for declaratory judgment that Defendant breached the agreement, among other things.[47]

### b. Defendant's waiver or rights

Plaintiff's fourth cause of action requests declaratory judgment that Defendant has waived his right to declare Joppa in default to Defendant. As previously discussed, Defendant is under no obligation to make a declaration of default prior to withholding the holdback funds if Joppa is in default to either Plaintiff or Defendant. However, even if this claim had some bearing on the resulting decision, it finds no basis in the relevant law or facts.

Plaintiff fails to point to any authority, in the Agreement or otherwise, that supports the contention that Defendant could somehow waive its rights to declare default by not making an official declaration of default within some indeterminate time frame. Conversely, as argued by the Defendant, the Agreement contains a clause entitled "No Waiver by Lender," which states, "Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right."[48]

Because the declaration requested by Plaintiff is wholly contradicted by the express language of the Agreement, the Court will dismiss Plaintiff's fourth cause of action for

---

[47] Defendant also argues that, regardless of whether Joppa is in default, Defendant has the right to withhold the funds pursuant to the language of the Agreement. The Agreement provides, "Lender may, without notice of any kind to Creditor . . . refrain from releasing to Creditor (or to Borrower), the Subordinated Holdback or any funds in the Holdback Account *in lender's sole discretion pursuant to this agreement*, or if the Borrower is in default to lender." Docket No. 6-1, at 2–3 (emphasis added). Because, as discussed, Defendant is within its rights to withhold the holdback funds due to Joppa's alleged default to Plaintiff, the Court need not decide whether Plaintiff could withhold the funds under this provision.

[48] Docket No 6-1, at 3.

16

declaratory judgment that Defendant has waived its right to declare Joppa in default, among other things.

C. ATTORNEYS' FEES

Defendant requests attorneys' fees pursuant to the Agreement, which states "Creditor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement."[49] Plaintiff does not dispute this request in its Response. Because the language in the Agreement regarding attorneys' fees is both broad and unambiguous, and because Plaintiff does not appear to dispute that an award is appropriate, the Court will award Defendant the appropriate attorneys' fees to be proven by affidavit.

## III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Leave to File Surreply (Docket No. 17) is GRANTED in part. It is further ORDERED that Defendant's Motion to Dismiss (Docket No. 6) is GRANTED along with Defendant's request for attorneys' fees. Defendant is directed to file an affidavit in support of an appropriate award of attorneys' fees on or before July 31, 2018. Any response to the affidavit by Plaintiff is due by August 15, 2018.

---

[49] *Id.*

DATED this 17th day of July, 2018.

BY THE COURT:

_____
Ted Stewart
United States District Judge